Cory R. Laird
Ryan G. Weldon
LAIRD COWLEY, PLLC
2315 McDonald Avenue, Suite 220
Missoula, MT 59801
P.O. Box 4066
Missoula, MT 59806-4066
Telephone:  (406) 541-7400
Facsimile:  (406) 541-7414
Email:       claird@lairdcowley.com
              rweldon@lairdcowley.com

Attorneys for Crum & Forster Specialty Insurance Company

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> GREENFIELDS IRRIGATION DISTRICT, INC., SPENCER PEARSON, and GREEN HILL FARMS, LLC, <br><br> Defendants. | Cause No. CV-26-24-GF-JTJ <br><br> COMPLAINT FOR DECLARATORY JUDGMENT |

Plaintiff Crum & Forster Specialty Insurance Company, by and through its counsel of record, and for its Complaint and Demand for Declaratory Judgment, alleges as follows:

1.      This is a declaratory judgment action regarding whether insurance coverage exists for Greenfield Irrigation District, Inc., related to the lawsuit filed

1

against it in Teton County as *Spencer Pearson et al. v. Greenfields Irrigation District*, DV-25-012.

## PARTIES

2.    Crum & Forster Specialty Insurance Company ("CFSIC") is a corporation organized and existing under the laws of the State of Delaware with a statutory home office in Delaware and main administrative office in Morristown, New Jersey.

3.    Defendant Greenfields Irrigation District, Inc., ("Greenfields"), is a Montana corporation with its principal place of business in Fairfield, Montana.

4.    Defendant Spencer Pearson is a citizen and resident of Fairfield, Montana.

5.    Defendant Green Hill Farms LLC ("Green Hill"), is a Montana company with its principal place of business in Fairfield, Montana.

## JURISDICTION AND VENUE

6.    The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.    Venue properly lies in this division, pursuant to 28 U.S.C. § 1392,

2

because the insurance policy at issue covered actions occurring in Teton County, and Greenfields, Green Hill, and Scott Pearson are located within, and have a physical address in, Fairfield, Montana, which is within Teton County.

8.    Teton County is within the Great Falls Division as outlined by the Montana Local Rules.  Dist. Mont. Civil L.R. 1.2(c)(3).

## REQUEST FOR DECLARATORY RELIEF

9.    This is an action for declaratory judgment, as authorized by Mont. Code Ann. § 27-8-101 *et seq*.

10.    CFSIC seeks a declaration as to its obligations, if any, to defend or to indemnify Greenfields with respect to claims made by Spencer Pearson and Green Hill in the underlying suit.

11.    The underlying suit against Greenfields was filed in Teton County with the State District Court, in the matter of *Pearson et al. v. Greenfields Irrigation District*, DV-25-012.

12.    Greenfields tendered its defense of the underlying suit to CFSIC. CFSIC is defending Greenfields under a properly asserted reservation of its rights.

13.    Scott Pearson and Green Hill are named as interested parties pursuant to Mont. Code Ann. § 27-8-301.

3

## THE UNDERLYING LAWSUIT

14.     Scott Pearson and his company's lawsuit against Greenfields, referred to as "GID" in the complaint before the state court, arises from alleged discrimination based upon marital status.  In the underlying lawsuit, Pearson alleges:

33.     Under GID's policy and operation procedures through March 2023, GID specifically used marital status in disparately determining acreage limitation; as a single unmarried individual could receive irrigation water on up to 960-acre owned, whereas two married individuals were limited to receiving irrigation water on up to 960-acre owned; instead of receiving irrigation water 960-acres for each married individual.  The same applied for acres leased.

Exhibit 1: Complaint, Feb. 27, 2025.

15.     Pearson and his company then claimed various violations of law and requested declaratory relief on the following 12 issues:

139.   The Court should declare GID cannot rely on its 1995 Petition to modify its policy concerning acreage limitation to avoid complying with MCA 85-7-1837(2), which requires GID to submit to qualified electors (MCA 85-7-1873(2)(a)) or submit by petition obtaining signatures by no less than 60% of landowners representing not less than 60% of irrigated land within GID (MCA 85-7-1837(2)(b)) any application of acreage limitation, including changes to the acreage limitation, and any such modifications by GID are not enforceable and therefore the 2024 Policy regarding acreage limitation is not enforceable.

. . .

4

142.   The Court should declare that GID cannot rely on its 1995 Petition as a basis for the establishment of acreage limitations in its 2024 Policy, as the definition of "Qualified Recipient"—those who are subject to the acreage limitation—is different between the RRA and the 2024 Policy and therefore the 2024 Policy regarding acreage limitation is not enforceable.

. . .

144.   The Court should declare that GID cannot rely on its 1995 Petition as a basis for the establishment of acreage limitations in its 2024 Policy, as the definition of "Qualified Recipient"—those who are subject to the acreage limitation—as such reliance on the 1995 Petition (which utilized the RRA to define "Qualified Recipient") would violate MCA 85-7-1837(7) (2023) and therefore the 2024 Policy regarding acreage limitation is not enforceable.

145.   The Court should declare that GID cannot rely on its 1995 Petition as a basis for the establishment of acreage limitations in its 2024 Policy, as the definition of "Qualified Recipient"—those who are subject to the acreage limitation—as such reliance on the 1995 Petition (which utilized the RRA to define "Qualified Recipient") would violate MCA 85-7-1837(7) (2023) and therefore the 2024 Policy regarding acreage limitation is not enforceable.

. . .

147.   This Court should declare that GID cannot rely on its 1995 Petition to have satisfied the requirements of MCA 85-7-1837(2), in light of the 2023 change in state law regarding the definition of who— "Qualified Recipient"—the acreage limitation applies to and therefore the 2024 Policy regarding acreage limitation is not enforceable.

148.   The Court should declare that as GID has not satisfied MCA 85-7-1837(2) to impose an acreage limitation in connection with its 2024 Policy, GID has no enforceable acreage limitation and therefore the 2024 Policy regarding acreage limitation is not enforceable.

5

. . .

154.   This Court should declare, the 1995 Petition is unenforceable, as it violates the minimum acreage limitation under MCA 85-7-1837(3) (1995) and (2023).

. . .

160.   The Court should declare the 2024 Policy is unenforceable, as it violates MCA 85-7-1837(3) (2023).

. . .

167.   The Court should declare that GID's 2024 Policy concerning the definition of a "Qualified Recipient" is vague and therefore void on its face and unenforceable in its application regarding acreage limitation.

. . .

175.   The Court should declare that GID's 2024 Policy regarding "Qualified Recipients" is vague-as-applied, and therefore void and unenforceable in its application regarding acreage limitation.

. . .

187.   The Court should declare that GID has failed to comply with MCA 85-7-1837(2) regarding the Disregarded Entity Paragraph, therefore the Disregarded Entity Paragraph concerning acreage limitation is unenforceable in its application regarding acreage limitation.

. . .

190.   The Court should declare, GID's Disregarded Entity Paragraph violates MCA 85-7-1837(7), and is therefore unenforceable in its application regarding acreage limitation.

16.     Pearson and his company then requested a writ of mandamus on the following two issues:

197.   The Court should enter a writ of mandamus to GID commanding GID to amend its Policy related to marital status in accordance with its 2024 Resolution.

200.   The Court should enter a writ of mandamus to GID commanding GID to deliver irrigation water to all assessed acreage within GID's boundaries, which have paid their assessment obligation, without discriminating on the basis of marital status.

## THE POLICY

### The Primary Policy – EPK-144486

17.     CFSIC issued Policy No. EPK-144486 to Greenfields, the terms of which are described below and in the Certified Policy attached as Exhibit 2.  The Policy was in effect from June 30, 2023, until June 30, 2024 (the "Primary Policy").

18.     The Primary Policy provides the following duty to defend:

We have the right and duty to defend the insured against any "suit" seeking "damages" to which this insurance applies.  We will pay "defense expenses" with respect to any "suit" against an insured that we defend.  However, we have no duty to defend the insured against any "suit" seeking "damages" for "bodily injury," "property damage" or "personal and advertising injury" to which this insurance does not apply.

Exhibit 2: Primary Policy at 1 of 30.

7

19.     The Primary Policy provides insurance coverage in the following

circumstances:

Insuring Agreement A – Bodily Injury and Property Damage

    a.  We will pay . . . those sums that the insured becomes legally obligated to pay as "damages" for "bodily injury" or "property damage" to which this insurance applies . . . .

    b.  This insurance applies to "bodily injury" and "property damage" only if . . . :

        (1)  Before the "policy period," no insured had knowledge of any "occurrence that could reasonably give rise to a "claim" under this policy. . . .

        (5)  That "bodily injury" or "property damage" first occurs during the policy period."

. . . .

Insuring Agreement B – Personal and Advertising Injury

    a.  We will pay . . . those sums that the insured becomes legally obligated to pay as "damages" for "personal and advertising injury" to which this insurance applies . . . .

    b.  This insurance applies to "personal and advertising injury" only if . . .

        (1)  Before the "policy period," no insured had knowledge of any offense that could reasonably give rise to a "claim" under this Policy. . . .

        (4)  The offense out of which the "claim" arises first took place during the "policy period."

Exhibit 2: Primary Policy at 1-2 of 10.

20.     Definitions for the Primary Policy include the following:

"Bodily Injury" means physical injury, sickness or disease sustained by a person, including mental anguish and death resulting from any of these at any time.

"Damages" means the monetary amount of any judgment, award, or settlement that an insured becomes legally obligated to pay as a result of a "claim" or "suit."  "Damages" does not include "cleanup costs," equitable or non-pecuniary relief, disgorgement of profits, sanctions, fines, or penalties.

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

"Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a.   False arrest, detention, or imprisonment;
b.   Malicious prosecution;
c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;
d.   Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;
e.   The use of another's advertising idea in your "advertisement"; or
f.   Infringing upon another's copyright, trade dress, or slogan in your "advertisement."

Exhibit 2: Primary Policy at 20-21, 25-26 of 30.

9

"Property damage" means:

    a. Physical injury to tangible property, including resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or,

    b. Loss of the use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Exhibit 2: Primary Policy at 27 of 30.

21.    The Primary Policy also specifically excludes continuous or progressive damage:

"Bodily injury" or "property damage" occurring or existing partly before and partly during the "policy period," or "personal and advertising injury" arising out of an offense, or arising out of the first of related offenses, committed partly during the "policy period," will be deemed to have occurred, existed, or been committed before the policy period.

If the date cannot be determined upon which such "bodily injury" or "property damage" first occurred or existed, or the date cannot be determined upon which such offense, or the first of related offenses was first committed, then, for the purposes of policies issued by us, such "bodily injury" or "property damage" will be deemed to have occurred or existed, and such offense or the first of related offenses will be deemed to have been committed before the "policy period."

Exhibit 2: Primary Policy at 10 of 10.

### The Excess Policy – EFX-123244

22.    CFSIC issued Policy No. EFX-123244 to Greenfields, the terms of which are described below and in the Certified Policy attached as Exhibit 3.  The

Policy was in effect from June 30, 2023, until June 30, 2024 (the "Excess Policy").

23.    Under the Excess Policy, "[i]f any 'underlying insurance' does not pay a loss for reasons other than the exhaustion of an aggregate limit of insurance, then we shall pay no loss."  Exhibit 3: Excess Policy at 1 of 10.

24.    The Excess Policy therefore only applies if the Primary Policy applies.  In other words, if there is no duty to defend or indemnify under the Primary Policy, then no duty to defend or indemnify exists under the Excess Policy.

## COUNT I – DECLARATORY RELIEF AS TO GREENFIELDS

25.    CFSIC realleges and incorporates the allegations in the preceding paragraphs as though fully set forth herein.

26.    The Complaint in the underlying lawsuit seeks a declaratory judgment and a writ of mandamus from the state district court.  Equitable remedies are specifically excluded from "damages" under the Primary Policy and Excess Policy.  Because the Primary Policy and Excess Policy only insure "damages," there is no duty to defend.  Because there is no duty to defend under either policy, there can be no duty to indemnify under either policy.

27.    The Complaint in the underlying lawsuit does not allege bodily injury, property damage, or personal and advertising injury as those terms are

defined in the Primary Policy and Excess Policy.  There is no duty to defend claims falling outside these definitions.  Because there is no duty to defend under either policy, there can be no duty to indemnify under either policy.

28.    The Complaint in the underlying lawsuit alleges discrimination based upon marital status.  *See, e.g.*, Exhibit 1: Complaint at ¶ 33.  This discrimination began in June of 2021, which is outside the coverage period.  *See, e.g.,* Exhibit 1: Complaint at ¶ 34.  Even assuming "damages" occurred here, any such damages occurred "partly before" the policy period of June 30, 2023, to June 30, 2024, meaning no coverage exists under either the Primary Policy or the Excess Policy. There is no duty to defend claims falling outside the coverage period.  Because there is no duty to defend under either policy, there can be no duty to indemnify under either policy.

29.    There is no coverage for the claims against Greenfields in the Complaint in the underlying lawsuit, so there is no duty to defend or indemnify under either policy.

## PRAYER FOR RELIEF

CFSIC prays for the following relief:

30.    The Court declare CFSIC owes no duty to defend or indemnify under CFSIC Policy No. EPK-144486 for the claims asserted by Pearson and Green Hill

against Greenfields in the underlying lawsuit,

31.    The Court declare CFSIC owes no duty to defend or indemnify under CFSIC Policy No. EFX 123244 for the claims asserted by Pearson and Green Hill against Greenfields in the underlying lawsuit.

32.    The Court declare CFSIC owes no duty to defend or indemnify under CSFIC Policy No. EPK-144486 because the claims asserted in the underlying complaint fall outside the coverage period.

33.    The Court declare CFSIC owes no duty to defend or indemnify under CFSIC Policy No. EFX-123244 because the claims asserted in the underlying complaint fall outside the coverage period.

34.    The Court declare CFSIC owes no duty to defend or indemnify under CFSCI Policy No. EFX-123244 because there is no duty to defend or indemnify under CFSIC Policy No. EPK-144486.

35.    CFSIC be awarded its costs and attorney fees in bringing this coverage action.

///

///

///

///

36.     The Court grants any additional or supplemental relief which it deems necessary.

DATED this 10th day of March, 2026.

LAIRD COWLEY, PLLC

By:   /s/ Ryan G. Weldon
      Ryan G. Weldon
      Attorneys for Crum & Forster Specialty Insurance
      Company